FUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KAREN MARIE TOOMEY

                            Plaintiff,

      -v-

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.

_____

18-CV-1165-MJR
DECISION AND ORDER

       Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 19).

       Plaintiff Karen Marie Toomey brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Toomey's motion (Dkt. No. 10) is granted, the Commissioner's motion (Dkt. No. 15) is denied, and the case is remanded.

## BACKGROUND

       On May 23, 2011, Toomey filed protectively an application for SSI, alleging disability as of February 19, 2011, due to depression, two bulging discs, deep vein thrombosis, anxiety and hypoglycemia. (Tr. 148, 168).[1] Her application was denied on

_____

[1]     References to "Tr." are to the administrative record in this case.

September 16, 2011, and she requested a hearing before an administrative law judge ("ALJ").  (Tr. 90-93, 96-98).  On July 11, 2013, following a hearing, the ALJ found that Toomey was not disabled.  (Tr. 16-35).

After the Appeals Council denied review, Toomey filed an action in this court.  (Tr. 3-8).  On July 8, 2016, Chief Judge Frank P. Geraci, Jr., remanded this case to the Commissioner for further proceedings.  (Tr. 1100-1107).  On September 26, 2016, the Appeals Council vacated the ALJ's unfavorable decision, remanded the case for further proceedings, and directed the ALJ to consolidate the claim with Toomey's subsequently filed SSI application.  (Tr. 1150-1153).

On May 30, 2018, a hearing was held before ALJ Lynette Gohr, at which Toomey appeared with counsel.  (Tr. 1010-1049).  A vocational expert also appeared.  On July 5, 2018, the ALJ issued a decision finding that Toomey is not disabled.  (Tr. 947-974).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.  *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Toomey has not engaged in substantial gainful activity since May 23, 2011, her application date. (Tr. 949). At step two, the ALJ concluded that Toomey has the following severe impairments: lumbar degenerative disc disease; thoracic degenerative disc disease with small disc herniations at T7-8 and T10-11; bilateral knee osteoarthritis and right knee degenerative joint disease; deep vein thrombosis; asthma; migraines, bilateral shoulder impingement, status post arthroscopic surgery; major depressive disorder; generalized anxiety disorder; and antisocial personality disorder. *Id*. At step three, the ALJ found that Toomey does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 950). Before proceeding to step four, the ALJ assessed Toomey's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except she can sit for four hours in an eight-hour workday, stand and/or walk for four hours in an eight-hour workday. She can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can

occasionally reach overhead with the bilateral upper extremities. She should avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, dust, odors, fumes and pulmonary irritants. She can have frequent exposure to vibration and frequently operate foot controls with the bilateral feet. She can tolerate no more than moderate levels of noise as defined in the DOT and its related publications. [She] [s]hould avoid working with bright lights or flickering lights such as would be experienced in welding or cutting metals. She is able to work in a low stress work environment defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and process.

(Tr. 953). Proceeding to step four, the ALJ found that Toomey has no past relevant work. (Tr. 960). At step five, the ALJ found that, considering Toomey's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, namely, Marker, Garment Sorter, and Classifier. (Tr. 960-961). Accordingly, the ALJ concluded that Toomey is not disabled under the Act. (Tr. 961).

IV.   _Toomey's Challenges_

Toomey argues that this case must be remanded because: (1) the only medical opinion relied upon by the ALJ as to her medical condition was stale; and (2) the ALJ failed to evaluate properly her credibility. The Court agrees with Toomey and finds that the case must be remanded.

An ALJ may not rely on medical source opinions that are stale when determining the claimant's RFC. _Biro v. Comm'r of Soc. Sec._, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (citing _Andrews v. Berryhill_, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (remanding for staleness when ALJ relied on consultative

examination that occurred prior to multiple surgeries over five years)); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015); aff'd, 652 F. App'x 25 (2d Cir. 2016).   A medical opinion may be stale if it is remote in time and does not account for a claimant's deteriorating condition. See, e.g., *Jones v. Comm'r of Soc. Sec.*, 10-CV-5831, 2012 U.S. Dist. LEXIS 119010 (E.D.N.Y. Aug. 22, 2016) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition."); *Hawkins v. Colvin*, 15-CV-6394, 2016 U.S. Dist. LEXIS 148380 (W.D.N.Y. Oct. 26, 2016) ("the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to plaintiff's degenerative disc disease becoming symptomatic."); *Girolamo v. Colvin*, 13-CV-06309, 2014 U.S. Dist. LEXIS 72749 (W.D.N.Y. May 28, 2014) (ALJ improperly relied upon opinions of consulting physicians rendered "prior to [p]laintiff's second surgery in 2011 and the related diagnostic testing associated therewith.").   In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's deteriorating condition. See, e.g., *Biro*, 335 F. Supp. 3d at 472 ("The Court finds the ALJ's consideration of Plaintiff's knee impairment unsupported by substantial evidence. First, [the consultative examiner's] opinion, which was rendered nearly five years before the ALJ's decision and before Plaintiff's September 2013 knee injury and two subsequent surgeries, was stale and not based on the complete medical record."); see also *Jeffords v. Comm'r of Soc. Sec.*, No. 17-CV-1085-MJR, 2019 WL 1723517, at *7 (W.D.N.Y. Apr. 18, 2019) (remanding for staleness when ALJ relied "almost exclusively, on medical opinions ... prior to plaintiff's 2013 spinal surgery and 2014 fall"); *Morales v. Comm'r of*

*Soc. Sec.*, No. 17 CV-341-FPG, 2019 WL 1109572, at *6 (W.D.N.Y. Mar. 11, 2019) (remanding where ALJ relied on consultative examiner's opinion that did not address "multiple hernia repair surgeries" and was rendered before two additional surgeries); *Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding.").

Here, in determining Toomey's physical RFC, the ALJ relied primarily on the medical opinion of consultative examiner, Dr. John Schwab, D.O., following a single examination of Toomey on November 11, 2015. (Tr.1853-1857). The ALJ assigned significant weight to Dr. Schwab's opinion. (Tr. 959).[2]

The ALJ erred in relying on the opinion of Dr. Schwab as it was stale. The record shows that Toomey's condition deteriorated subsequent to Dr. Schwab's opinion. A left shoulder MRI conducted on November 23, 2015 revealed: mild degenerative changes in the AC joint with anterior downsloping of the acromion and mild tendinopathy of the distal infraspinatus tendon and a very subtle 2mm partial-thickness incomplete tear at the articular fibers of the anterior supraspinatus tendon; and very subtle SLAP lesion Type II extending slightly into the anterior labrum. (Tr. 2461). Toomey had to attend pain management due to her numerous pain-causing impairments. (Tr. 1890). She ultimately had to undergo arthroscopic surgery on her left shoulder, in January 2016. (Tr. 2267-2268). On February 3, 2016, Toomey reported that she was still having mild discomfort

---

[2] The Court notes that the ALJ's decision is difficult to follow as it does not discuss the medical evidence and medical opinions in chronological order. It jumps back and forth between dates, making it very confusing. Also, the section of her opinion which weighs the opinion evidence is conclusory, with little discussion as to why she grants various medical opinions certain weights. (Tr. 959-960). In fact, for many of the opinions, there is no discussion anywhere else in the decision as to who the medical sources are or what their opinions actually were.

with lifting heavy objects and standing for long periods of time. (Tr. 2142-2143). Her right shoulder pain returned in July 2016 after feeling a "pop." (Tr. 2615). Her left knee impairment began to cause stiffness, swelling, clicking, catching, and grinding, and her right knee impairment began to cause increased buckling. (Tr. 2757, 2667).

Because Dr. Schwab's opinion was stale, the ALJ could not rely on it. Consequently, because Dr. Schwab's opinion was the only medical opinion upon which the ALJ relied when determining Toomey's physical RFC, there is now a gap in the record necessitating a remand. See *Smith v. Saul*, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); see also *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion left gaps in the record triggering duty to develop the record). "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)); see also *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("In the absence of a medical opinion to support the ALJ's finding ... the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

Further, the Court finds that the ALJ failed to evaluate properly Toomey's credibility. SSA regulations outline a two-step framework under which an ALJ must

evaluate a claimant's subjective description of his or her impairment and related symptoms. 20 C.F.R. §§ 404.1529, 416.929; see also SSR 96–7p, 1996 WL 374186, at *6-9 (July 2, 1996). The ALJ must first consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence and limiting effects of the claimant's symptoms. If the claimant's statements about his or her symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

The second step in this process, which requires the ALJ to make a finding about a claimant's credibility, requires him to do so by setting forth a discussion of certain factors and "giving specific reasons for the weight accorded to the claimant's testimony." *Matejka v. Barnhart*, 386 F.Supp.2d 198, 205 (W.D.N.Y. 2005) (citing 20 C.F.R. § 404.1529). The factors that the ALJ must evaluate in assessing credibility include: (1) the individual's activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See *Id.* at 205-206 (quoting *Murphy v. Barnhart*, 2003 WL 470572, *10-11 (S.D.N.Y. Jan.21, 2003) (citing 20 C.F.R. §404.1529(c)).

In the instant case, the ALJ briefly summarized medical evidence and Toomey's testimony and then stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 954). She then stated that she evaluated the credibility factors and found:

> [S]everal reasons why the claimant's allegations of debilitating symptoms, should be deemed to be not wholly persuasive nor consistent with evidence in the record. Although the record shows the claimant does have the impairments noted above, the symptoms do not cause the degree of limitation alleged.

(Tr. 955). However, she never actually set forth her reasons. (Tr. 955-960). Instead, she summarized some of the medical evidence and concluded her credibility analysis by stating: "The claimant's subjective complaints are not fully supported and the objective medical evidence does not support the alleged severity of symptoms." (Tr. 960). She never explained how the evidence she summarized supported her conclusory assertions that Toomey's allegations were not credible. This was error and requires remand. See *Bowen v. Berryhill*, 2017 WL 1159729, at *4 (W.D.N.Y. Mar. 29, 2017); see also *Algburi v Comm'r of Soc. Sec.*, 2019 WL 1577984, at *4 (W.D.N.Y. Apr. 12, 2019) (finding the ALJ's credibility analysis was flawed as the decision did not make clear whether he actually considered all of the relevant credibility factors and the decision failed to explain his credibility determination "explicitly and with sufficient specificity that a reviewing court may be able to decide whether there are legitimate reasons for the [ALJ's] disbelief and whether his decision is supported by substantial evidence.") (citations omitted); *Moore v. Berryhill,* 2017 WL 2981522, at *3 (W.D.N.Y. July 13, 2017) ("the ALJ's credibility

- 12 -

determination is conclusory and insufficient"); *Smith v. Berryhill*, 2017 WL 2728582, at *3 (W.D.N.Y. June 26, 2017) ("Here, the ALJ's credibility assessment lacks the requisite specificity"); *Whited v. Berryhill*, 2017 WL 2129492, at *4 (W.D.N.Y. May 17, 2017) ("Here, the ALJ's credibility determination is conclusory and insufficient").

## CONCLUSION

For the reasons stated, Toomey's motion for judgement on the pleadings (Dkt. No. 10) is granted, the Commissioner's motion for judgement on the pleadings (Dkt. No. 15), is denied, and the case is remanded.[3]

The Clerk of Court shall take all steps necessary to close the case.

**SO ORDERED.**

Dated:   May 18, 2020
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] Toomey asks the Court to order that any further proceedings to be conducted on remand be expedited. The Court declines to do so.

- 13 -